**Jeffrey BATES, Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security,* Appellee.**

No. 94–3411.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1995.

Decided May 16, 1995.

---

* As of March 31, 1995, the Social Security Administration became an independent agency from the Department of Health and Human Services.

Therefore, the court has substituted Shirley S. Chater for Donna E. Shalala pursuant to Fed. R.App.P. 43(c).

John August Bowman, Davenport, IA, argued (Michael DePree, on the brief), for appellant.

John Beamer, Asst. U.S. Atty., Des Moines, IA, argued (Gary L. Howard, on the brief), for appellee.

Before BEAM, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MURPHY, Circuit Judge.

BEAM, Circuit Judge.

Jeffrey Bates appeals from the district court's [1] order affirming the decision of the Secretary of Health and Human Services (Secretary) to deny Bates disability insurance benefits. After reviewing the record, we affirm.

Bates applied for benefits in July 1991, and alleged that he had been disabled since he hurt his back in September 1990. His application was denied initially and upon reconsideration. Bates requested a hearing before an administrative law judge (ALJ).

The evidence before the ALJ showed that Bates was born in 1959, was married with four children, had a GED, and had formerly worked as a truck driver, dock worker, ce-

---

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

ment truck driver, mechanic, cook, and mover. After injuring his back at work, he underwent a lumbar laminectomy to relieve herniated disks. Bates had not worked since his injury, although he went through extensive physical and vocational rehabilitation, and had looked for work as part of his vocational rehabilitation. Bates testified that he was disabled because of the combination of physical limitations on his movements and strength, and chronic pain caused by his back injury. He also testified that he was depressed and had a hard time concentrating.

At the hearing, it was uncontested that Bates could not return to his past relevant work, most of which was classified as medium to very heavy work. Thus, the key to this case is whether the ALJ properly posed the hypotheticals upon which the vocational expert (VE) based his testimony that Bates could perform sedentary work. The first hypothetical presented a claimant who was 32 years old and possessed a GED; who could lift and carry 20 pounds occasionally and 10 pounds frequently; who could climb, balance, stoop, kneel, crouch, and crawl on an occasional basis; and who could sit 45 to 60 minutes without interruption and walk for longer periods. Based upon this hypothetical, the VE testified that the claimant could perform sedentary, unskilled work. Bates's counsel stipulated to this conclusion. For the second hypothetical, the ALJ added the limitation that the claimant could not perform constant bending and twisting throughout the day and could only drive a maximum of 30 minutes at one time. In response, the VE testified that the claimant would still be able to perform the same unskilled sedentary jobs as before. The third hypothetical posed by the ALJ added the restriction that the claimant would have to take unscheduled rest breaks at least once a day, lasting from 15 to 60 minutes. The VE testified that this claimant would be precluded from competitive employment because he would miss too much time from work. Bates's counsel then posed a fourth hypothetical to the VE, based on the earlier three, and adding the restrictions that the claimant would need to make postural changes every hour and could not reach overhead more than occasionally; that frequent kneeling, bending, stooping, squatting, and

twisting at the waist would result in excessive pain; and that pain existed such that it affected his appetite and sleep and caused depression. In response to this hypothetical, the VE testified that the claimant would be precluded from competitive employment because he could not maintain a consistent work pace and concentration.

The ALJ concluded that Bates was not disabled and thus not entitled to benefits. Evaluating Bates's complaints of pain in accordance with *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984), the ALJ noted that the medical evidence showed that Bates's exertional limits allowed him to perform light or sedentary work. The medical evidence also showed that Bates failed to follow his physical therapy regimen and lost strength and conditioning; and that he took painkillers and muscle relaxants to control his pain, and reported no side effects to his doctors. Further, he was able to carry things, such as groceries and his daughter, and his daily activities included helping with vacuuming, dishes, laundry, and occasionally driving and going shopping. The ALJ also noted that Bates had had a good work history in the past, and although not steadily motivated, had looked for work as part of his vocational rehabilitation, and had once decided not to even apply for a job because he felt the pay was too low. The ALJ found Bates's complaints of disabling pain were "exaggerated" and not credible. The ALJ determined that, while Bates could not return to his past relevant work, his admitted activities and the capacities described by his physicians showed he had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a); and, based on the testimony of the VE, that Bates could perform unskilled, sedentary work.

The Appeals Council denied Bates's request for review, the district court affirmed, and this appeal followed.

■■■ In reviewing the Secretary's decision to deny disability benefits, we will affirm if the decision is supported by substantial evidence on the record as a whole. *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir.1995). "Substantial evidence is that

which a reasonable mind might accept as adequate to support the Secretary's conclusion." *House v. Shalala*, 34 F.3d 691, 694 (8th Cir.1994). Evidence that detracts from the Secretary's decision is considered, but even if inconsistent conclusions may be drawn from the evidence, the decision will be affirmed where the evidence as a whole supports either outcome. *Chamberlain*, 47 F.3d at 1493; *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992). As we have stated many times, we do not reweigh the evidence presented to the ALJ, *e.g., Loving v. Department of Health & Human Servs.*, 16 F.3d 967, 969 (8th Cir.1994), and it is "the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir.1992).

■ It is uncontested that under the five-step burden-shifting framework set forth in 20 C.F.R. § 404.1520, the first four elements were met: Bates had not engaged in substantial gainful employment since his injury, he had a serious impairment, he did not meet the criteria of a listed presumptive disability, and he was unable to return to his past relevant work. Thus, the burden shifted to the Secretary to show that there are other jobs in the local and national economy that Bates can perform. *See Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir.1992). The Secretary met her burden in this case when, in response to the first two hypotheticals posed by the ALJ, the VE testified that Bates could perform unskilled sedentary work, of which 2500 positions existed in Iowa and 125,000 existed nationwide. We emphasize that Bates's counsel stipulated that, given the limitations of the first hypothetical, the claimant would be able to perform sedentary work.

■ Naturally, Bates argues that the first two hypotheticals did not take into consideration all relevant factors, and that the VE's response to the last two hypotheticals—that the claimant would be precluded from competitive employment—should control. We disagree. The last two hypotheticals primarily added two factors which the ALJ dis-

counted. First, the ALJ discounted Bates's claim that he is suffering from depression. Bates's support for his allegation consisted of his and his wife's testimony that he felt differently than he used to, got angry, yelled, had lost interest in hobbies, and thought about suicide. There was also a statement made by one of his treating physicians, Dr. Michael Cullen, who, in a summary of his initial evaluation of Bates, stated that "there is a significant element of depression and this is felt to be reactionary in character"; and a statement by Dr. Ronald Pawl, a pain specialist who examined Bates on one occasion, whose evaluation letter stated that "Mr. Bates is a somatizer." Such conclusory statements, without medical diagnoses based on objective evidence, do not support a finding that Bates suffered from depression. *Chamberlain*, 47 F.3d at 1494 (treating physician's opinion must be supported by clinical or diagnostic data, and its value is lessened if it consists only of conclusory statements); *Loving*, 16 F.3d at 971 (treating physician's and one-time nontreating psychologist's evaluations given little weight when reports were conclusory and lacked supporting evidence); *see Browning*, 958 F.2d at 823. Furthermore, Bates admitted at the hearing that his doctors had never tested him regarding the depression he alleged, and that the sum of their statements regarding the extent of his depression was that "with chronic pain—chronic back pain there's always depression." We conclude that the ALJ properly discounted this factor.

■ Second, the ALJ discounted Bates's allegations of pain. Our review of the record convinces us that the ALJ correctly used the criteria set forth in *Polaski*, 739 F.2d at 1321–22, to discount Bates's subjective complaints of disabling pain as being inconsistent with the record as a whole.[2] Bates argues that the ALJ erred in failing to make the required credibility findings regarding the testimony of Bates's wife. *See Ricketts v. Secretary, Dep't Health & Human Servs.*, 902 F.2d 661, 664 (8th Cir.1990). The ALJ stated that he had considered Mrs. Bates's testimony, but he did not make express cred-

---

**2.** "As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." *House*, 34 F.3d at 694.

ibility findings as to her. A careful review of Mrs. Bates's testimony and the ALJ's opinion reveal that no error was committed. Her brief testimony dealt with her husband's activities and mood swings, without detailing the nature and extent of his pain. Thus, it is clear that the ALJ could (and possibly did) find Mrs. Bates's testimony quite credible, but not a determining influence on the outcome of the decision. We conclude that the first two hypotheticals posed by the ALJ were proper because they encompassed all of the claimant's limitations the ALJ found credible. *See, e.g., Chamberlain,* 47 F.3d at 1495; *House,* 34 F.3d at 694.

■ Finally, Bates argues that the VE's testimony should be discredited. In response to an ALJ request for types of sedentary work Bates could perform, the VE listed checker, reviewer, and sorter as examples of "a number of jobs that would fall under the category of clerical unskilled sedentary." Bates argues that because the *Dictionary of Occupational Titles* classifies these as semiskilled jobs, the VE's testimony is not consistent with the source materials the VE relied upon, and is thus fatally flawed. We disagree. First, we rejected a similar argument to the one Bates advances in *House,* 34 F.3d at 695. Second, we note again that at the hearing, Bates's attorney stipulated that within the context of the first hypothetical, the claimant could perform sedentary work. It was after this stipulation, and only in response to the ALJ's request, that the VE listed these three jobs as examples of the "larger number" of sedentary jobs Bates could perform. We conclude that the ALJ properly relied on the VE's testimony to find that jobs existed in the economy which Bates could perform.

Substantial evidence supports the Secretary's decision. Accordingly, we affirm.